IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 24, 2009 Session

**RONALD A. HENRY v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 269265    Rebecca J. Stern, Judge**

_____

**No. E2009-01082-CCA-R3-PC - Filed October 7, 2010**

_____

Petitioner, Ronald A. Henry, filed a post-conviction petition asking the court to set aside his convictions for burglary, theft, vandalism, and possession of burglary tools or to grant a delayed appeal. Petitioner claims that his trial counsel was constitutionally ineffective because counsel failed to adequately defend against video evidence that depicts Petitioner committing the crime; failed to preserve his right to appeal; and failed to file an Anders brief. After a hearing, the post-conviction court denied relief. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Ronald A. Henry.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William H. Cox, III, District Attorney General; and Brian S. Finlay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

The record in this case is exceedingly sparse. We glean from it that on January 11, 2007, Petitioner was convicted by a jury on a four-count indictment in case number 259192 charging him with burglary, theft of property, vandalism/malicious mischief, and possession of burglary tools. Prior to sentencing, Petitioner accepted the State's plea agreement offer

of an effective sentence of 12 years for the convictions in case number 259192. The plea agreement also provided that Petitioner would plead guilty to an additional count of burglary and agree to the revocation of his probation on five earlier sentences. The State agreed to dismiss six additional charges of burglary, theft, attempted burglary, and evading arrest. Finally, the agreement provided that Petitioner was not waiving his right to appeal his convictions in case number 259192. Petitioner was sentenced on July 11, 2007. On July 16, 2007, after meeting with counsel, Petitioner signed a written waiver of his right to appeal. Trial counsel never filed the waiver with the court.

Thereafter, Petitioner filed a petition for post-conviction relief, claiming ineffective assistance of counsel. The amended petition asserted numerous allegations of ineffective assistance. However, on appeal, Petitioner raised only the following issues: 1) that counsel failed to adequately defend against incriminating video evidence; 2) that counsel failed to preserve Petitioner's right to a direct appeal; and 3) that counsel failed to file an Anders brief.

Trial counsel testified at the post-conviction hearing that Petitioner was "involved in several car wash robberies." Trial counsel summarized the evidence as follows:

> There was a video of the act taking place. There was video showing a car driving through the parking lot, tags, all that sort of stuff were visible. [Petitioner] was identified on the tape wearing a hoodie, which showed his face in the tape. And also a pair of gloves that were particular in their manufacture. They were black but they had white panels or very light panels on the outside which were later found with him. A crow bar. I think there were possibly bags of money. Utility cords. There were several pieces of physical evidence as well as the video and the testimony of the owner.

Trial counsel said that the State elicited testimony from the owner of the car wash to properly authenticate the video. Trial counsel testified that he reviewed the videotapes prior to trial and made numerous objections during the owner's testimony. He explained that the owner was a "technical expert and had installed the system himself" and that "it was overwhelmingly obvious that [the witness] was qualified to record [the video], to install the system, and to testify about what was recorded and how it was recorded." Therefore, he did not seek funds to retain a defense expert to challenge the admissibility of the video. However, counsel reviewed documents supporting the witness's credentials and "question[ed the witness] fairly substantially about his background, his technical expertise."

Trial counsel testified that he met with Petitioner at the jail five to eight times and that he also met with him before court appearances. Petitioner insisted on going to trial, believing he would win. However, after the jury verdict Petitioner "changed his perspective" and was

more realistic about the burglary case and several other pending charges. Both Petitioner and trial counsel felt fortunate that the State was still willing to negotiate a plea with respect to other pending charges. Petitioner eventually entered into a plea agreement resolving the outstanding cases, but he retained his right to appeal his jury convictions.

Counsel said that after sentencing, trial counsel and Petitioner discussed an appeal. At a meeting on July 16, 2007, counsel "advised [Petitioner] that [counsel] didn't feel there was a whole lot of merit in an appeal." Nevertheless, he informed Petitioner that Petitioner had a right to pursue an appeal if he wanted to do so. Trial counsel recalled that he based his conclusion about the appeal on the strength of the State's case against Petitioner and the lack of reversible errors. Indeed, he viewed the case to be a "slam dunk" for the State. Counsel recalled that Petitioner did not offer many witnesses for his defense. Moreover, although the trial court denied several defense motions, trial counsel viewed the court's decisions to be correct. During their meeting, Petitioner told trial counsel "that he trusted [trial counsel's] opinion, and that he didn't want to have to deal with [the appeal] process and would rather go ahead and serve his time." Both Petitioner and trial counsel signed a document in which Petitioner waived his right to appeal. The document, dated July 16, 2007, was entered into evidence at the post-conviction hearing.

Following the meeting, trial counsel sent various materials to Petitioner. His last contact with Petitioner was in July 2007.

Trial counsel testified that in 2008 he was contacted by members of Petitioner's family who were inquiring about the case. Counsel recalled that Petitioner's mother contacted trial counsel "well after" the July 2007 meeting. Trial counsel said that he "never spoke with [Petitioner's mother] during [trial counsel's] representation." He denied that he ever told Petitioner's mother that Petitioner should not appeal his case because he would receive a longer jail sentence. He also recalled speaking with Petitioner's uncle sometime in the summer of 2008. He said he advised Petitioner's uncle of the final disposition of the case. Counsel said that he believed he sent Petitioner a copy of all the documents he had in his file.

Petitioner's mother, Angela Henry, testified that Petitioner asked her to contact trial counsel. She spoke with counsel over the telephone, and he told her that he was no longer handling the case. Counsel told her that Petitioner's case was final and that counsel "wasn't going to appeal his case." She was unable to recall exactly when she spoke with trial counsel, but she noted that "[i]t was a few months after [Petitioner] was transported to the penitentiary" and "well after" he pled guilty in the other cases.

Petitioner testified that he completed the eleventh grade and that he could read and write. Petitioner acknowledged that he signed a waiver of his right to appeal. He explained that he signed the waiver because he was told that an appeal would not be successful and that he could "probably get more time." He said that trial counsel never explained that he could file a motion for a new trial or an Anders brief. Petitioner said that after he signed the waiver he was unable to contact trial counsel and he asked his family members to do so. He also testified that he did not remember if he had tried to contact trial counsel to request an appeal.

After the evidentiary hearing, the post-conviction court entered a written order denying relief. The post-conviction court concluded that Petitioner failed to demonstrate that trial counsel was ineffective. Regarding the issues Petitioner raises on appeal, the post-conviction court reasoned that even if counsel was deficient, Petitioner failed to show that those deficiencies prejudiced him. The court explained that to prove prejudice Petitioner had to show that he wanted to pursue an appeal and that the appeal had merit. The post-conviction court found that Petitioner had failed to show that there was a "meritorious basis for an appeal." Moreover, it found that counsel and Petitioner discussed the appeal, that counsel explained that he did not think an appeal had merit, and that Petitioner waived his right to appeal. It further stated that, in the absence of a meritorious issue, the failure to file an Anders brief could not be prejudicial. The court also found that Petitioner had failed to show that counsel was not responsive to Petitioner's requests for the file or for transcripts.

On appeal, Petitioner contends that the post-conviction court's ruling "was contrary to the evidence"; that trial counsel was ineffective for failing to appeal his convictions; and that the post-conviction court's "reasoning on the Anders brief issue is contrary to law."

## II. Analysis

Petitioner is entitled to relief under the Post-Conviction Procedure Act if his "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. To be successful in his claim for post-conviction relief, Petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See id. at -110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). On appeal, we conduct a de novo review of the post-conviction court's findings of fact, but we presume its findings are correct "unless the evidence preponderates against [them]." Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001); see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). We do not "reweigh or re-evaluate the evidence

or substitute [our] own inferences for those drawn by the [post-conviction] court. Furthermore, questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction] judge." Fields, 40 S.W.3d at 456 (citation omitted). However, a claim of ineffective assistance of counsel is a mixed question of law and fact, see Burns, 6 S.W.3d at 461, and we review the post-conviction court's conclusions of law, "such as whether counsel's performance was deficient or whether that deficiency was prejudicial," purely de novo, "with no presumption of correctness," Fields, 40 S.W.3d at 458.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The petitioner must counter the strong presumption counsel's conduct fell within the range of reasonable professional assistance with which we must begin. See Strickland, 466 U.S. at 690. To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause [the] petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

There is, however, "a small category of cases in which actual prejudice need not be shown." Wallace v. State, 121 S.W.3d 652, 657 (Tenn. 2003). In United States v. Cronic, 466 U.S. 648 (1984), the United States Supreme Court outlined three such scenarios: (1) "when the accused is denied counsel at a critical stage of his trial"; (2) "when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) "when circumstances are such that although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." See Grindstaff v. State,

297 S.W.3d 208, 217 n.9 (Tenn. 2009) (quoting Cronic, 466 U.S. at 659-60) (quotation marks omitted).

On appeal, Petitioner contends that trial counsel "simply abdicated his duties to zealously represent [him] and challenge the evidence at trial." In support of his claim, Petitioner's brief cites trial counsel's testimony characterizing the State's case as a "slam dunk" and trial counsel's testimony that he "could not remember if he subjected the expert/victim to voir dire, could not remember [i]f the expert/victim presented any credentials to support his 'expertise' in the very video equipment he owned and thus controlled." Petitioner also complains that counsel "failed to even consider asking the trial court for funds to obtain an expert to counter the state's expert/victim." In Petitioner's view, the latter points demonstrate that trial counsel "failed to make any attempt to challenge this most crucial piece of evidence." According to Petitioner, these facts show that counsel failed to subject the State's evidence to proper adversarial testing and therefore demonstrate that Petitioner is entitled to relief even absent a showing of actual prejudice.

This argument is unconvincing. The post-conviction court found that trial counsel sought discovery, filed appropriate motions, and sufficiently communicated with Petitioner. Trial counsel's post-conviction characterization of the State's proof as a "slam dunk" does not convince us that he abdicated his duties to his client at trial. In fact, Petitioner has never contested that he is the person shown on the video. Moreover, the uncontradicted evidence in the record indicates that counsel investigated the authenticity of the videotape and the qualifications of the witness. He questioned the witness regarding his background and expertise but was ultimately unsuccessful in challenging the witness whose credentials to testify were "overwhelmingly obvious."

Petitioner's reliance on Kimmelman v. Morrison, 477 U.S. 365 (1986), is also misplaced. In Kimmelman, counsel "neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery," and that "complete lack of pretrial preparation put[] at risk both the defendant's right to an ample opportunity to meet the case of the prosecution and the reliability of the adversarial testing process." Id. at 385 (citations and quotations marks omitted).

In short, the record in the instant case does not show that counsel "complete[ly]" failed to test the prosecution's case. Wallace, 121 S.W.3d at 660. Petitioner's reliance on Cronic and Kimmelman is simply an attempt to circumvent the post-conviction court's ruling that he failed to show prejudice. His argument is not persuasive.

Further, we agree with the post-conviction court that Petitioner has failed to show counsel was deficient and that he was prejudiced. There is no evidence concerning the

likelihood of a different outcome had counsel investigated the case further, raised a particular issue regarding the videotape evidence, or tried to challenge the qualifications of the witness through which the videotape was introduced. Thus, neither Cronic nor Strickland afford Petitioner relief on this claim.

Petitioner next argues that counsel was deficient for failing to appeal Petitioner's case or at least file the written waiver Petitioner signed. There is no dispute that Petitioner decided to forego an appeal and that he knowingly and voluntarily signed a document waiving his right to a direct appeal. Rather, it appears that Petitioner changed his mind at some point, but there is no evidence that he did so within the time frame required by Tennessee Rule of Appellate Procedure 4. Further, Petitioner only communicated his change of heart to trial counsel through family members who did not speak to trial counsel until sometime in 2008, well after the time for filing his direct appeal. In other words, nothing in this record suggests counsel had any reason to file an appeal within the time allowed.

The fact that trial counsel did not file the written waiver of appeal does not change our conclusion. Although Tennessee Rule of Criminal Procedure 37(d)(2) requires counsel to "file with the clerk, during the time within which the notice of appeal could have been filed, a written waiver of appeal," this court has previously held that "[f]ailure to conform to [Rule 37(d)] does not . . . violate a constitutional right," Rainer v. State, 958 S.W.2d 356, 357 (Tenn. Crim. App. 1997). Petitioner argues that Rainer is distinguishable. We disagree. In Rainer there was *some* evidence that the client had, within the time frame for filing an appeal, communicated to his attorney that he had changed his mind. See id. In Petitioner's case, there is none. Thus, as in Rainer, "[h]ad . . . [P]etitioner's lawyer failed to properly perfect an appeal after having been instructed to do so, . . . [P]etitioner would be entitled to relief," but "trial counsel had been told that his client did not desire an appeal, and . . . no contradictory instructions were received until long after the date for filing an appeal had passed." Id.

Petitioner's argument that trial counsel was deficient for failing to file an Anders brief is also without merit. As best we can discern, Petitioner asserts that although Petitioner waived his right to appeal and believed an appeal was futile, trial counsel was nevertheless required to file an Anders brief. However, the record reflects that Petitioner and trial counsel agreed that an appeal would be useless. Trial counsel explained Petitioner's options; Petitioner decided to forego the appeal and signed the waiver. Anders briefs involve situations in which the attorney believes an appeal is frivolous but the client chooses to pursue the appeal. See Anders v. California, 386 U.S. 738, 742 (1967); see also Tenn. Ct. Crim. App. R. 22. Indeed, Rule 22 assumes that an appeal has already been filed. As explained above, Petitioner waived his right to appeal. Trial counsel was not required to file a Rule 22 brief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE